ALFORD, Judge.
Plaintiff, Robert L. Griffis, Sr., appeals the trial court judgment in favor of the defendant, Department of Health and Human Resources (DHHR) and its Division of Health Planning and Development (DHPD), affirming the administrative hearing officer’s findings that plaintiff’s proposed nursing homes did not conform with state requirements for Section 1122 applications.
BACKGROUND
Section 1122, as amended, of the federal Social Security Act, 42 U.S.C.A. § 1320a-l, establishes a program designed to curb unnecessary capital expenditures by health care facilities, including nursing homes. Under this program, nursing home developers and owners are required to secure advance approval from a designated planning agency for any capital expenditures in order to be reimbursed with federal funds. In Louisiana, the designated planning agency, at the time plaintiff applied, was DHPD, a division of DHHR. In order to implement the Section 1122 program, DHHR developed a State Health Plan and issued its own policies and guidelines. Louisiana Register, Vol. 8, No. 8, pp. 412-417 (August 20, 1982). (Department of Health and Human Resources Rule).[1]
In the fall of 1983, plaintiff filed Section 1122 applications with DHPD in regard to two proposed nursing homes, one to be located in Baton Rouge, the other in Boga-lusa. Both applications were subsequently denied by DHPD, for the following stated reasons:
1. The proposal does not conform to the State Health Plan goals and objectives relative to the bed to population ratio for long term care facilities.
*547 2. A less costly alternative would be to utilize licensed and approved beds and services in the service area.
An additional reason for denial of the Bogalusa facility was also stated.
3. There was substantial community opposition to the project.
Plaintiff then requested and received an administrative hearing before an independent state hearing officer in accordance with the appeal procedure adopted by Louisiana. Louisiana Register, Vol. 8, No. 8 at 415. The hearing officer’s final decision becomes, for the purposes of Section 1122, DHPD’s decision. At the hearing, the record revealed that the proposed Baton Rouge project would increase the nursing home bed to population age 65 + ratio to 85.9/1000 for the service area which included East Baton Rouge, Livingston and West Baton Rouge parishes. The proposed Bo-galusa project would increase the ratio to 110.7/1000 for the service area which included Washington and St. Tammany parishes. The hearing officer agreed with DHPD’s finding that these proposals exceeded the approved ratio of 80/1000 and that this ratio was to be applied on a service area basis rather than a statewide basis. Relative to the Bogalusa facility, the hearing officer also found that DHPD did not abuse its discretion in finding there was community opposition to the project. Based on these findings, the hearing officer affirmed DHPD’s (DHHR’s) denial of plaintiff’s applications.
Having exhausted administrative remedies, plaintiff instituted the instant action in district court. After reviewing the record of the administrative hearing, the trial court upheld the decision of the hearing officer and DHPD, finding that DHPD did not abuse its discretion in determining that substantial community opposition existed to the Bogalusa project, that substantial evidence existed to support DHPD’s denial of the applications for non-conformity to state requirements and that DHPD’s action was rational and regular and not arbitrary and capricious. We agree and affirm.
APPLICATION OF BED/POPULATION RATIO
Plaintiff contends that the trial court erred in finding that the 80/1000 bed to population ratio in the State Health Plan applied to service areas and not to the state as a whole.
Louisiana’s appeal procedures for rejected proponents state that the plaintiff in the instant action can only question DHPD’s adherence to its own procedures and not the “correctness, completeness, adequacy or appropriateness” of these procedures. Louisiana Register, Vol. 8, No. 8 at 415.
The procedures in question appear in two separately numbered paragraphs in the State Health Plan, 1982-1987, at pages 9-76 and 9-77.

Resource Goals

The following goals are established in regard to the supply of nursing home beds:
(1) The nursing home bed supply should be less than 80 per 1,000 population age 65 +. The supply as of September 30,1982, is 61.4 SNF, ICF-I and II beds in operation per 1,000 population age 65 +. There are 5,075 SNF, ICF-I and II beds currently approved but not yet in operation.
(2) The average annual occupancy rate should be at least 95% for all existing nursing homes within a specific facility service area. The service area for nursing facility proposals includes, at a minimum, the parish in which the facility is located or proposed to be located, and any other parish, any portion of which falls within a 10-mile radius of the location of the facility.
(The number of beds approved for construction in a service area will be taken into consideration prior to approval of additional beds. Distribution of beds within the service area will also be taken into consideration.)
Plaintiff contends that the wording of these two paragraphs indicates that the service area referred to in the second para *548 graph pertains only to the occupancy rate and not to the bed/population ratio. Plaintiff claims that because of the reference in the first paragraph to statewide supply as of September 30, 1982, all determinations of bed/population ratio must be made on a statewide rather than on a service area basis. A review of the record shows that the hearing officer recognized the ambiguity in the plan and noted that the parenthesized sentences appearing after the occupancy rate paragraph grammatically applied to the second paragraph, but that “a reasonable interpretation would dictate that it applies to both bed-to-population ratio and occupancy rate criteria.” These parenthesized sentences refer to consideration of number and distribution of beds in a service area when considering approval of additional beds. The hearing officer further determined that to accept plaintiffs contention would “theoretically permit a tremendous concentration of nursing homes in one particular area” which would be clearly contrary to the goals of State Health Plan to provide health services, facilities and manpower throughout the state.
Moreover, we note that the State Health Plan consistently refers to providing services at the community level and to the federal law (P.L. 93-641 and its amendment, P.L. 96-79) which requires that health planning be done on a regional basis so that the peculiar and particular needs of a relatively homogenous geographical area can be addressed. The introduction to Chapter IX of the State Health Plan, the chapter that includes the paragraphs in ■question, states on page 9-1 “[i]t is the purpose of this chapter on resource goals to delineate how it can be determined if an area has too few or too many health care resources to meet the needs of its residents— ” (emphasis added).
We also note that DHHR’s rule which deals with criteria for Section 1122 reviews constantly refers to service area and provides that when considering the need for a proposed project, DHPD will review, among other criteria “[t]he availability of similar facilities ... within the service area_[accessibility of the target population ... to existing and proposed facilities and services ... delineation of the proposed service area_ [and] projected population growth or lack of growth of the proposed service area.” (Emphasis added). Louisiana Register, Vol 8, No. 8 at 416, 417. These references to service area apply to both bed/population ratio and to occupancy rate.
The hearing officer also found that testimony revealed that DHPD has consistently and uniformly applied a service area concept to bed/population ratio, starting with the division of the state into three service areas in 1980. The plan in effect at the time this question arose provided for service areas to be the parish where the facility was located and any other parish within a 10-mile radius of the facility. The hearing officer noted that this issue was res nova because “all previous applicants either interpreted the provisions in the same manner as the State, or have relied upon the State’s interpretation and have not complained.”
We agree with the trial court that the hearing officer’s interpretation of the pertinent rules and regulations is legally correct. LSA-R.S. 49:964(G)(4).
FINDING OF COMMUNITY OPPOSITION
Plaintiff also claims that the trial court erred in finding substantial community opposition to the Bogalusa project and that, even if there was opposition, it was not sufficient in and of itself to deny plaintiff’s application.
The record reveals 459 letters of opposition signed by residents of the community were received by DHPD. While there was some indication that the signers may not have been fully aware of the exact nature of the project, it was evident that they did not support a for-profit facility. Moreover, letters of opposition were also received from Bogalusa’s mayor and three of seven councilmen. We agree with the trial court that DHHR’s determination of substantial *549 community opposition is not clearly wrong. LSA-R.S. 49:964(G)(6). Having previously found that DHHR acted correctly in determining that the Bogalusa project did not conform to state requirements, the question of whether a finding of community opposition is sufficient on its own to support the denial of the application is preter-mitted.
CONCLUSION
DHHR’s conclusion to deny the permit based on the correct interpretation of its rules and the proof of community opposition as to one project is neither arbitrary or capricious nor an abuse of discretion. LSA-R.S. 49:964(G)(5). Absent a finding that the administrative agency acted arbitrarily or capriciously, or that it abused its discretion, a reviewing court will not reverse a state agency determination. Mayeaux’s Food v. State, Dept. of Health, 470 So.2d 469 (La.App. 1st Cir.1985).
For the above and foregoing reasons, we affirm the judgment of the trial court in favor of the defendant. Costs of this appeal are to be borne by the plaintiff.
AFFIRMED.

. Also see Louisiana Register, Vol. 9, No. 11, pp. 757-762 (November 20, 1983) (Department of Health and Human Resources Rule). The relevant parts of the revised rule are the same as the previously cited rule, with the exception that the name of the designated planning agency under DHHR has been changed to Division of Policy, Planning and Evaluation (DPPE).